**LAW OFFICE OF STEWART KATZ**
STEWART KATZ, State Bar #127425
555 University Avenue, Suite #270
Sacramento, California 95825
Telephone: (916) 444-5678
Facsimile: (916) 444-3364

Attorney for Plaintiffs,
Estate of MARK ANTHONY SCOTT, deceased, by and through MARY SCOTT, TINA SCOTT, REGINA ALLEN and KIM NZIBO as Successors in Interest; MARY SCOTT, Individually; TINA SCOTT, Individually; REGINA ALLEN, Individually; and KIM NZIBO, Individually;

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Estate of MARK ANTHONY SCOTT, deceased, by and through MARY SCOTT, TINA SCOTT, REGINA ALLEN and KIM NZIBO as Successors in Interest; MARY SCOTT, Individually; TINA SCOTT, Individually; REGINA ALLEN, Individually; and KIM NZIBO, Individually; | NO. |
| Plaintiffs, | **COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND STATE LAW** |
| vs. | **JURY TRIAL DEMANDED** |
| COUNTY OF SACRAMENTO; Sacramento County Sheriff's Department Sheriff SCOTT JONES; Sacramento County Main Jail Commander Captain ROSEANNE RICHAEL; Sacramento County Sheriff's Department Chief of Correctional and Court Services JAMIE LEWIS; Sacramento County Main Jail Chief of Correctional Health Services AARON BREWER; Sacramento County Jail Systems Medical Director ROBERT PADILLA, MD; Sacramento County Main Jail Director of Nursing with Correctional Health Services PAM HARRIS; Sacramento County Main Jail Watch Commander, Lieutenant GEORGE McKEEL (#11); Sacramento County Sheriff's | |

Department Deputy JAMES TIDWELL (#897); Sacramento County Sheriff's Department Deputy DAVID PANTOJA (#2615); Sacramento County Sheriff's Department Deputy KEN BECKER (#931); Sacramento County Sheriff's Department Deputy MICHAEL MATRANGA (#572); Sacramento County Sheriff's Department Sergeant MICHAEL XIONG (#71); Sacramento County Sheriff's Department Sergeant SCOTT HUFFORD(#41); CARYL SKERRITT, RN and DOES 1 through 40, inclusive,

Defendants.
_____/

Plaintiffs complain and allege as follows:

## I. JURISDICTION

1. This Complaint seeks damages pursuant to Title 42 U.S.C. sections 1983 and 1988, for the violation of plaintiffs' civil rights and for violations of California State Law. Jurisdiction is founded upon Title 28 U.S.C. sections 1331 and 1343. This Court has supplemental jurisdiction over the alleged state law claims pursuant to 28 U.S.C. section 1367.

## II. VENUE

2. Plaintiffs' claims, alleged herein, arose in the County of Sacramento, California. Therefore, venue lies in the Eastern District of California pursuant to 28 U.S.C. section 1391(b)(2).

## III. INTRODUCTION

3. This action stems from Mark Scott's death at the Sacramento County Main Jail on January 6, 2012. Scott was sick and vomiting blood throughout the previous day. His pleas and the pleas of other inmates on his behalf to seek emergent medical care were met with silence, derision and indifference. Eventually, the unchecked vomiting led to a torn esophagus, internal bleeding and his death. The coroner attributed Scott's death to Mallory-Weiss syndrome, which, simply put, is a name for vomiting excessively to a point

where it damages the body, and in this case, fatally. It is rare that Mallory-Weiss syndrome results in death, largely because of the fact that the condition is so easily treated.

## IV. PARTIES

4. The Plaintiffs are all United States Citizens.

5. Plaintiff, Mary Scott, was decedent's mother. Mary Scott is a successor in interest to Mark Scott under California state law.

6. Plaintiff, Tina Scott, is decedent's sister and is a successor in interest to Mark Scott under California state law.

7. Plaintiff, Regina Allen, is decedent's sister and is a successor in interest to Mark Scott under California state law.

8. Plaintiff, Kim Nzibo, is decedent's sister and is a successor in interest to Mark Scott under California state law.

9. Plaintiffs, Mary Scott, Tina Scott, Regina Allen and Kim Nzibo, are bringing survival causes of action in this matter as the Estate of Mark Anthony Scott pursuant to California Code of Civil Procedure sections 377.10 et seq. and are suing individually for the wrongful death of their son and brother respectively, and for the violation of their civil rights.

10. Defendant County of Sacramento is a political subdivision of the State of California, created and existing by virtue of the laws of the State of California.

11. Defendant County of Sacramento operates and manages the Sacramento County Main Jail and is, and was at all times mentioned herein, responsible for the actions or inactions and the policies, procedures and customs/practices of all Correctional Health Services relating to the Sacramento County Main Jail.

12. Defendant, Scott Jones, is, and was at all times mentioned herein, the Sheriff of the Sacramento County Sheriff's Department and employed by the County of Sacramento. As Sheriff, defendant Jones is and was responsible for the training and supervision of all Sacramento County Sheriff's Department and Sacramento County Main Jail employees and/or agents, including defendants Does 1 through 40. Defendant Jones is

and was also responsible for the promulgation of the policies and procedures and permitted the customs/practices pursuant to which the acts alleged herein occurred. Defendant Jones is being sued in his official and individual capacities. Defendant Jones is also the Facility Administrator of the Sacramento County Main Jail as defined by Title 15 of the California Code of Regulations.

13. Defendant Jamie Lewis was at all times mentioned herein, the Sacramento County Sheriff's Department Chief of Correctional and Court Services employed by the County of Sacramento and acting in that capacity. As Chief of Correctional and Court Services, Defendant Lewis was responsible for the training, supervision and discipline of the Sacramento County Main Jail employees and/or agents, including Defendants Tidwell, Pantoja, Becker, Matranga, Xiong, Hufford, McKeel, Richael and Does 1 through 40. Defendant Lewis was also responsible for the promulgation of the policies and procedures and all permitted the customs/practices pursuant to which the acts alleged herein occurred. Defendant Lewis is being sued in his official and individual capacities.

14. Defendant Roseanne Richael was at all times mentioned herein, a Captain with the Sacramento County Sheriff's Department and the Sacramento County Main Jail Commander, employed by the County of Sacramento and acting in those capacities. As Jail Commander, Defendant Richael is and was responsible for the training and supervision of all Sacramento County Sheriff's Department and Sacramento County Main Jail custodial employees and/or agents, including defendants Tidwell, Pantoja, Becker, Matranga, Xiong, Hufford, McKeel and Does 1 through 40. Defendant Richael is and was also responsible for the promulgation of the policies and procedures and permitted the customs/practices pursuant to which the acts alleged herein were committed. Defendant Richael is being sued in her official and individual capacities.

15. Defendant Aaron Brewer was at all times mentioned herein, the Chief of Correctional Health Services at the Sacramento County Main Jail and employed by the County of Sacramento. As Chief of Correctional Health Services, Defendant Brewer was personally responsible for the training and supervision of Correctional Health Services

employees and/or agents, including Defendants Pam Harris and Caryl Skerritt and Does 31- through 40. Defendant Brewer was also personally responsible for the promulgation of the policies and procedures and permitted the customs/practices pursuant to which the acts alleged herein were committed. Defendant Brewer is being sued in his official and individual capacities.

16. Defendant Robert Padilla, M.D. was at all times mentioned herein, the Medical Director of the Sacramento County Jail System. Defendant Padilla was the facility Health Authority as set forth under Title 15 of the California Code of Regulations. Defendant Padilla was personally responsible for the training and supervision of Correctional Health Services employees and/or agents, including defendants Pam Harris and Caryl Skerritt and Does 35 through 40. He was also responsible for the promulgation of the policies and procedures and permitted the customs/practices pursuant to which the acts alleged herein were committed. Defendant Padilla is being sued in his official and individual capacities.

17. Defendant Pam Harris was at all times mentioned herein Director of Nursing with Correctional Health Services at the Sacramento County Main Jail employed by the County of Sacramento. Defendant Harris was personally responsible for the training and supervision of Correctional Health Services employees and/or agents, including defendant Caryl Skerritt and Does 31 through 35. She was also responsible for the promulgation of the policies and procedures and permitted the customs/practices pursuant to which the acts alleged herein were committed. Defendant Harris is being sued in her official and individual capacities.

18. Defendant Lieutenant George McKeel was at all times mentioned herein Watch Commander for the Sacramento County Main Jail and employed by the County of Sacramento. As Watch Commander, Defendant McKeel was responsible for the training, supervision and discipline of Main Jail employees and/or agents, including Defendants Tidwell, Pantoja, Becker, Matranga, Xiong and Hufford and Does 1-20. Defendant McKeel is being sued in his official and individual capacities.

Complaint for Violation of Civil Rights and State Law;
Estate of Mark Scott

5

19. Defendant Caryl Skerritt, R.N. was at all times mentioned herein a registered nurse with Correctional Health Services of Sacramento County Main Jail employed by the County of Sacramento. Defendant Skeritt is being sued in her official and individual capacities.

20. Deputy James Tidwell was at all times mentioned herein a Sacramento County Sheriff's Department deputy employed by Defendant County of Sacramento at the Sacramento County Main Jail. Defendant Tidwell is being sued in his official and individual capacities.

21. Deputy David Pantoja was at all times mentioned herein a Sacramento County Sheriff's Department deputy employed by Defendant County of Sacramento at the Sacramento County Main Jail. Deputy Pantoja is being sued in his official and individual capacities.

22. Deputy Ken Becker was at all times mentioned herein a Sacramento County Sheriff's Department deputy employed by Defendant County of Sacramento at the Sacramento County Main Jail. Deputy Ken Becker is being sued in his official and individual capacities.

23. Deputy Michael Matranga was at all times mentioned herein a Sacramento County Sheriff's Department deputy employed by Defendant County of Sacramento at the Sacramento County Main Jail. Deputy Michael Matranga is being sued in his official and individual capacities.

24. Sergeant Scott Hufford was at all times mentioned herein a Sacramento County Sheriff's Department Sergeant employed by Defendant County of Sacramento at the Sacramento County Main Jail. Sergeant Scott Hufford is being sued in his official and individual capacities. Sergeant Hufford was responsible for the training, supervision and discipline of Sacramento County Main Jail employees and/or agents, including Defendants Tidwell, Pantoja, Becker, Matranga and Does 1-20.

25. Sergeant Michael Xiong was at all times mentioned herein a Sacramento County Sheriff's Department Sergeant employed by Defendant County of Sacramento at the

Sacramento County Main Jail. Sergeant Michael Xiong is being sued in his official and individual capacities. Sergeant Xiong was responsible for the training, supervision and discipline of Sacramento County Main Jail employees and/or agents, including Defendants Tidwell, Pantoja, Becker, Matranga and Does 1-20.

26. The true names and identities of defendants Does 1 through 10 are presently unknown to plaintiffs. Plaintiffs allege on information and belief that each of Defendants Does 1 through 10 was employed by the Sacramento County Sheriff's Department at the time of the conduct alleged herein. Plaintiffs allege that defendants Does 1 through 10, and each of them were deliberately indifferent to plaintiff Scott's medical needs and health and safety, and failed to summon emergent medical care. Does 1 through 10 violated decedent Mark Scott's civil rights, were negligent, and/or encouraged and/or directed and/or enabled and/or ordered other defendants to engage in such conduct. Plaintiffs will seek to amend this Complaint as soon as the true names and identities of defendants Does 1 through 10 have been ascertained.

27. The true names and identities of defendants Does 11 through 15 are presently unknown to plaintiffs. Plaintiffs allege on information and belief that each of Defendants Does 11 through 15 were employed by the Sacramento County Sheriff's Department at the time of the conduct alleged as supervisors and were responsible for the supervision, training and discipline of Lieutenant McKeel, Sergeants Xiong and Hufford and Deputies Tidwell, Pantoja, Becker, and Matranga. Plaintiffs allege that Defendants Does 11 through 15, and each of them were deliberately indifferent to plaintiff Scott's medical needs and health and safety, were negligent, and/or encouraged and/or directed and/or enabled and/or ordered other Defendants to engage in such conduct. Plaintiffs will seek to amend this Complaint as soon as the true names and identities of Defendants Does 11 through 15 have been ascertained.

28. The true names and identities of defendants Does 16 through 20 are presently unknown to plaintiffs. Plaintiffs allege on information and belief that each of Defendants Does 16 through 20 were employed by the Sacramento County Sheriff's Department at the time of the conduct alleged and were responsible for the promulgation of the policies and procedures and permitted the customs/practices pursuant to which the acts alleged herein were

committed. Plaintiffs will seek to amend this Complaint as soon as the true names and identities of Defendants Does 16 through 20 have been ascertained.

29. The true names and identities of Defendants Does 21 though 30 are presently unknown to plaintiffs. Plaintiffs allege on information and belief that each of Defendant Does 21 through 30 was employed by the County of Sacramento, and/or the Sacramento County Sheriff's Department and/or Correctional Health Services at the time of the conduct alleged herein. Plaintiffs allege that each of Defendants Does 21 through 30 was responsible for providing adequate medical care and/or provided inadequate medical care for decedent Mark Scott at the time of the incident. Plaintiffs allege that each of Defendants Does 21 through 30 was also responsible for and caused the acts and injuries alleged herein. Plaintiffs will seek to amend this Complaint as soon as the true names and identities of defendants Does 21 through 30 have been ascertained.

30. The true names and identities of Defendants Does 31 though 35 are presently unknown to plaintiffs. Plaintiffs allege on information and belief that each of Defendant Does 31 through 35 was employed by the County of Sacramento, and/or the Sacramento County Sheriff's Department and/or Correctional Health Services at the time of the conduct alleged herein. Plaintiffs allege that each of Defendants Does 31 through 35 was responsible for providing the training, supervision and/or conduct of the Correctional Health Services employees and/or agents involved in this incident. Plaintiffs will seek to amend this Complaint as soon as the true names and identities of defendants Does 31 through 35 have been ascertained.

31. The true names and identities of Defendants Does 36 though 40 are presently unknown to plaintiffs. Plaintiffs allege on information and belief that each of Defendant Does 36 through 40 was employed by the County of Sacramento, and/or the Sacramento County Sheriff's Department and/or Correctional Health Services at the time of the conduct alleged herein. Plaintiffs allege that each of Defendants Does 36 through 40 was responsible for the promulgation of the policies and procedures and permitted the customs/practices pursuant to which the acts alleged herein were committed. Plaintiffs will seek to amend this Complaint as

soon as the true names and identities of Defendants Does 36 through 40 have been ascertained.

32. Defendants Scott Jones, Roseanne Richael, Jamie Lewis, Aaron Brewer, Robert Padilla, MD, Pam Harris, George McKeel, James Tidwell, David Pantoja, Ken Becker, Michael Matranga, Michael Xiong, Scott Hufford and Does 1 through 40, and each of them, to the extent they engaged in any acts or omissions alleged herein engaged in such acts or omissions under color of state law.

## V. EXHAUSTION OF PRE-LAWSUIT PROCEDURES

33. Plaintiffs The Estate of Mark Anthony Scott, Mary Scott, Regina Allen and Kim Nzibo filed governmental tort claims with the County of Sacramento on March 22, 2012, as a pre-requisite to the state law claims alleged herein. Plaintiff Tina Scott filed a governmental tort claim with the County of Sacramento on March 30, 2012. None of the claims have been formally rejected, but as forty-five days have passed since the claims were filed, the claims can be deemed rejected as a matter of law.

## VI. FACTUAL ALLEGATIONS

34. As of January 4, 2012, and at the time of his death, Mark Scott was a pretrial detainee at the Sacramento County Main Jail on several cases.

35. At the time of this incident, medical care and treatment was provided to Sacramento County Main Jail inmates by employees and/or agents of the Sacramento County Sheriff's Department and Correctional Health Services.

36. On January 5, 2012, Mark Scott was in obvious physical distress. His symptoms included, but were not limited to, vomiting blood throughout the day. It was apparent to anyone who interacted with Scott that his condition was serious and that he needed immediate, medical attention.

37. Inmates at the Sacramento County Main Jail have no ability to obtain medical care without the assistance of jail personnel.

38. Mark Scott made numerous pleas for medical attention to the correctional staff. He did this in various ways proscribed to inmates by jail policies, including utilizing the call button in his cell.

39. Deputies Tidwell, Pantoja, Becker and Matranga were all assigned to decedent's housing unit during the time of the Incident. Each of these individuals was directly responsible to provide for the safety and protection of Mark Scott. But for their constitutionally deficient actions and inactions and violations of state law, Mark Scott's death would have been avoided. Sergeants Hufford and Xiong were at all times during the time of the Incident supervisors of deputies Tidwell, Pantoja, Becker and Matranga. Each of the Sergeants was directly responsible to provide for the safety and protection of Mark Scott. But for their constitutionally deficient actions and inactions and violations of state law, Mark Scott's death would have been avoided.

40. These pleas did not bring any medical aid. However, they did result in admonishments from the correctional staff for Scott to quit bugging them.

41. Other inmates both witnessed these efforts to obtain medical aid and made efforts on Scott's behalf to have him seen by a medical professional. They had no more luck than Scott did. Scott's cellmate reported telling Deputy Tidwell that Scott was "fucked up" and that "He has blood on his neck" and that he was "bleeding out of his mouth." Tidwell responded to these comments with "There isn't shit we can do! He needs to speak for himself. Don't push the fucking button!" Tidwell threatened that there would be repercussions if other inmates kept bugging him about Scott's condition—that they would all be locked down.

42. Scott's efforts to directly plead with Deputy Tidwell despite Scott's showing Tidwell a plastic, blood-filled bag, were similarly unsuccessful.

43. This failure to adequately summon emergency medical care was the direct result of defective policies and practices of the Sacramento County Main Jail and Correctional Health Services.

44. As a result of the aforementioned conduct, no timely medical aid was summoned to assist Mark Scott prior to his demise.

45. Deputy Tidwell claims to have spoken with nurse Caryl Skerritt, who, according to Tidwell, said Scott should drink "plenty of water" and sign up for nurse's sick-call if his problems persisted. January 5th was a Friday and the next nurse's sick-call would be after the weekend on Monday.

46. Harris, Padilla and Brewer were responsible for the discipline, training and supervision of RN Skerritt during the relevant times. Had Skerritt been properly supervised and trained, Scott's death would have been avoided.

47. By the early morning of January 6th, Mark Scott, who was only 48 years-old, was dead. Scott's failure to receive medical treatment resulted in his vomiting and bleeding to the point where his esophagus was so damaged that he died. The coroner's autopsy findings declared his death a result of this unchecked vomiting, putting it under the rubric of Mallory Weiss Syndrome.

48. It is rare that people die from Mallory Weiss Syndrome because it is so easily treated if given any proper medical attention.

49. Scott's death was a consequence of inadequate Sheriff's Department policies, practices and training regarding the recognition and response to an inmate's obvious medical needs. Defendants County of Sacramento, Jones, Richael, Lewis, Brewer, Harris, Padilla and Does 16 through 20 and Does 36 through 40 were responsible for the supervision and training of deputies responsible for protecting and caring for decedent Scott. Had these individuals been properly supervised and trained, Scott's death would have been avoided.

50. In the statutorily mandated post-death investigation undertaken by the Sacramento County Sheriff's Department many inmates reported both the obvious nature of Scott's prolonged, physical distress and the callousness with which the correctional staff ignored multiple pleas to help Scott.

51. Defendants County of Sacramento, Jones, Richael, Lewis, Brewer, Harris and Padilla, Does 16 through 20 and Does 36 through 40, despite having read and/or signed off

on the investigative report which included numerous reports of officer misconduct, they not only found the actions, or more accurately, inactions, of the deputies and correctional health staff appropriate, but in complete disregard to the witness statements in their possession. They did not perform any follow-up investigation or initiate any disciplinary action against any involved person.

52. Mary Scott was and is emotionally devastated by the death of Mark Scott, who was her only surviving son.

53. Mark Scott's sisters, Tina Scott, Regina Allen and Kim Nzibo are also emotionally distraught at the death of their brother and, additionally, at the effect his death has had on their mother.

## VII.  CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**Deliberate Indifference to
Serious Medical Needs, Health and Safety 14th Amendment
(Survival Action – 42 U.S.C. Section 1983)**
*(Against Defendants Jones, Richael, Lewis, Brewer, Padilla, Harris, McKeel, Tidwell, Pantoja, Becker, Matranga, Xiong, Hufford, Skerritt and Does 1 through 40)*

54. On behalf of the decedent Mark Scott, all Plaintiffs re-allege and incorporate by reference paragraphs 1 through 53, as though fully set forth herein.

55. Defendants' acts and/or omissions as alleged herein, including but not limited to their failure to provide Scott with medical care and/or take other measures to prevent his death after noticing his need for medical attention, and the acts and/or omissions of the Defendants in failing to train, supervise and/or promulgate appropriate policies and procedures at the Jail, resulted in Scott's death. His medical symptoms which were ignored were an obvious and immediate threat to his health and safety.

56. As a direct and proximate result of Defendants' conduct, Scott lost his life.

57. As a direct and proximate result of the Defendants' conduct, Plaintiffs suffered damages as alleged herein.

Complaint for Violation of Civil Rights and State Law;
Estate of Mark Scott                                                                                                   12

58. The aforementioned acts and/or omissions of the individually named Defendants were malicious, reckless and/or accomplished with a conscious disregard of decedent's rights thereby entitling Plaintiffs to an award of exemplary and punitive damages according to proof and as permitted by law.

## SECOND CLAIM FOR RELIEF
### Unconstitutional Policy
### (Survival Action - 42 U.S.C. Section 1983)
*(Against Defendants County of Sacramento, Jones, Richael, Lewis, Brewer, Harris, Padilla, and Does 16 through 20 and Does 36 through 40)*

59. On behalf of the decedent Scott, all Plaintiffs re-allege and incorporate by reference paragraphs 1 through 58, as though fully set forth herein.

60. The aforementioned acts and/or omissions of the Defendants in being deliberatively indifferent to decedent's serious medical needs, health and safety and violating decedent's civil rights were the direct and proximate result of policies of Defendants County of Sacramento, Jones, Richael, Lewis, Brewer, Harris, Padilla and Does 16 through 20 and Does 36 through 40, as alleged herein.

61. Such policies include but are not limited to an ongoing pattern of deliberate indifference to the medical needs, health and safety of Jail inmates.

62. The policies of said Defendants were a direct and proximate cause of the Plaintiffs' injuries and death of the decedent Mark Scott in that said Defendants failed to adequately train and supervise their employees and/or agents to prevent the occurrence of the constitutional violations occurring in this Incident. Said Defendants also failed to promulgate appropriate policies or procedures or take other measures to prevent this Incident.

63. As a direct and proximate result of the aforementioned customs, policies and/or practices of said Defendants, the decedent and Plaintiffs suffered injuries and damages as alleged herein.

### THIRD CLAIM FOR RELIEF

**Unconstitutional Practices/De Facto Policy**
**(Survival Action - 42 U.S.C. Section 1983)**
*(Against Defendants County of Sacramento, Jones, Richael, Lewis, Brewer, Harris, Padilla, and Does 16 through 20 and Does 36 through 40)*

64. On behalf of the decedent Scott, all Plaintiffs re-allege and incorporate by reference paragraphs 1 through 63, as though fully set forth herein.

65. The aforementioned acts and/or omissions of the Defendants in being deliberatively indifferent to decedent's serious medical needs, health and safety and violating decedent's civil rights were the direct and proximate result of the customs, practices or de facto policies of Defendants County of Sacramento, Jones, Richael, Lewis, Brewer, Harris, Padilla, Does 16 through 20 and Does 36 through 40, as alleged herein.

66. Such customs and/or practices and/or de facto policies include but are not limited to an ongoing pattern of deliberate indifference to the medical needs, health and safety of Jail inmates.

67. The customs, practices and/or de facto policies of said Defendants were a direct and proximate cause of the Plaintiffs' injuries and death of the decedent Scott in that said Defendants failed to adequately train and supervise their employees and/or agents to prevent the occurrence of the constitutional violations occurring in this Incident. Said Defendants also failed to promulgate appropriate policies or procedures or take other measures to prevent this Incident.

68. As a direct and proximate result of the aforementioned customs, practices and/or de facto policies of said Defendants, the decedent and Plaintiffs suffered injuries and damages as alleged herein.

### FOURTH CLAIM FOR RELIEF

**Supervisory Liability**
**(Survival Action – 42 U.S.C. Section 1983)**
*(Against Defendants Jones, Richael, Lewis, Brewer, Padilla, Harris, McKeel, Xiong, Hufford and Does 31 through 35 and Does 11 through 15)*

69. On behalf of the decedent Scott, all Plaintiffs re-allege and incorporate by reference paragraphs 1 through 68, as though fully set forth herein.

70. Defendants Jones, Richael, Lewis, Brewer, Padilla, Harris, McKeel, Xiong, Hufford and Does 31 through 35 and Does 11 through 15 tacitly encouraged, ratified and/or approved of the acts and/or omissions alleged herein, and knew that such conduct was unjustified and would result in violations of constitutional rights.

71. The customs, policies and/or practices of said Defendants were a direct and proximate cause of the Plaintiffs' injuries and death of the decedent Scott, in that said Defendants failed to adequately train and supervise their employees and/or agents to prevent the occurrence of the constitutional violations occurring in this Incident. Said Defendants also failed to promulgate appropriate policies or procedures or take other measures to prevent this Incident.

72. As a direct and proximate result of the aforementioned customs, policies and/or practices of said Defendants, the decedent and Plaintiffs suffered injuries and damages as alleged herein.

### FIFTH CLAIM FOR RELIEF
**Wrongful Death**
**(Cal. Code of Civil Procedure section 377.60 et seq.)**

73. On behalf of the decedent Scott, all Plaintiffs re-allege and incorporate by reference paragraphs 1 through 72, as though fully set forth herein.

74. The acts and/or omissions of the Defendants alleged herein and detailed below caused the wrongful death of Scott and were the direct and proximate cause of Plaintiffs injuries entitling Plaintiffs to recover damages pursuant to Code of Civil Procedure sections 377.60 et seq.:

   a. **Negligent Supervision, Training, Hiring and Retention (Cal. State Law)**
   *(Against Defendants Jones, Richael, Lewis, Brewer, Padilla, Harris, McKeel, Xiong, Hufford and Does 31 through 35 and Does 11 through 15)*

Defendants Jones, Richael, Lewis, Brewer, Padilla, Harris, McKeel, Xiong, Hufford and Does 31 through 35 and Does 11 through 15 have a duty to hire, supervise, train, and retain employees and/or agents so that its employees and/or agents refrain from the conduct alleged herein but breached that duty causing the conduct alleged herein. This breach proximately caused damages and injuries as alleged herein and resulted in the wrongful death of Scott.

Complaint for Violation of Civil Rights and State Law;
Estate of Mark Scott                                                                                     15

b. **Failure to Furnish/Summon Medical Care (Cal. Govt. Code § 845.6)**
*(Against Defendants County of Sacramento, Tidwell, Pantoja, Becker, Matranga, Xiong, Hufford, Skerritt and Does 1 through 10)*

Tidwell, Pantoja, Becker, Matranga, Xiong, Hufford, Skerritt and Does 1 through 10 knew or had reason to know that Scott was in need of immediate medical care and the Defendants failed to take reasonable action to summon such medical care or provide that care resulting in decedent's death and a violation of California State Law and specifically California Government Code section 845.6. This conduct proximately caused damage and injuries to decedent and Plaintiffs. County of Sacramento is vicariously liable for the conduct of Defendants Tidwell, Pantoja, Becker, Matranga, Xiong, Hufford, Skerritt and Does 1 through 10. The actions of the individually named Defendants were malicious, reckless and/or accomplished with a conscious disregard of Plaintiffs' rights, thereby entitling Plaintiffs to an award of exemplary and punitive damages according to proof and as permitted by law.

c. **Professional Negligence/Medical Malpractice (Cal. State Law)**
*(Against Defendants County of Sacramento, Skerritt, and Does 21 through 30)*

Defendants' medical care to the decedent was negligent and failed to meet the professional standards of care for such treatment, proximately causing Plaintiffs' injures. Defendant County of Sacramento is vicariously liable for the conduct of Defendants Skerritt and Does 21 through 30.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

1. For compensatory, general and special damages against each Defendant, jointly and severally, in the amount proven at trial;

2. For punitive and exemplary damages against each named Defendant(s), other than governmental entities, in an amount appropriate to punish Defendant(s) and deter others from engaging in similar misconduct;

Complaint for Violation of Civil Rights and State Law;
Estate of Mark Scott                                                                                      16

3. For costs and reasonable attorneys' fees pursuant to 42 U.S.C. section 1988 and as otherwise authorized by statute or law;

4. For such other relief, including injunctive and/or declaratory relief, as the Court may deem proper.

Dated: January 5, 2013                             Respectfully submitted,

/s/ Stewart Katz
STEWART KATZ,
Attorney for Plaintiffs

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand trial by jury.

Dated: January 5, 2013                             Respectfully submitted,

/s/ Stewart Katz
STEWART KATZ,
Attorney for Plaintiffs